COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.  2-05-422-CR

 

 

 

RODGER LOU GRISSAM                                                       APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

 

                                              ------------

 

              FROM THE 355TH DISTRICT COURT OF HOOD COUNTY

 

                                              ------------

 

                     MEMORANDUM OPINION ON
REMAND[1]

 

                                              ------------








Appellant Rodger Lou Grissam challenges the legal
and factual sufficiency of the evidence to support his conviction and
twelve-year sentence for burglary.  In
our original opinion and judgment, we reversed the trial court=s
judgment, rendered a judgment of conviction on the lesser included offense of
criminal trespass, and remanded the case for a new trial on punishment.  Grissam v. State (AGrissam
I@), No.
02-05-00422-CR, 2007 WL 2405122, at *4B5 (Tex.
App.CFort
Worth Aug. 24, 2007) (mem. op., not designated for publication), rev=d, Grissam
v. State (AGrissam II@), 267
S.W.3d 39, 40 (Tex. Crim. App. 2008). 
Appellant=s indictment charged burglary
under two theories, (1) breaking and entering with intent to commit theft and
(2) breaking and entering and committing or attempting to commit theft.  Id. at *1.  The abstract paragraph of the jury charge
contained only an instruction on Aintent
to commit theft,@ but the application paragraph
contained only an instruction on Acommitted
or attempted to commit theft.@  Id. at *2B3.  Holding that there was no evidence that
Appellant Acommitted or attempted to commit
theft@Cthe only
offense submitted by the application paragraphCwe
reversed the trial court=s judgment and rendered judgment
on the lesser included offense of criminal trespass.  Id. at *4, 5.








The court of criminal appeals reversed our
judgment, instructing us that because the charge contained both theories of
burglary, even though only one was in the application paragraph, we should have
measured the legal sufficiency of the evidence against the requirements for
conviction under either theory.  Grissam
II, 267 S.W.3d at 40.  Following the
court of criminal appeals= directive to weigh the
sufficiency of the evidence against both theories of burglary, we now affirm
the trial court=s judgment.

                                      Standards
of Review

When reviewing the legal sufficiency of the
evidence to support a conviction, we view all the evidence in the light most
favorable to the prosecution in order to determine whether any rational trier
of fact could have found the essential elements of the crime beyond a
reasonable doubt.  Jackson v. Virginia,
443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Clayton v. State, 235
S.W.3d 772, 778 (Tex. Crim. App. 2007). 
The sufficiency of the evidence should be measured by the elements of
the offense as defined by the hypothetically correct jury charge for the case.  Grotti v. State, 273 S.W.3d 273, 280
(Tex. Crim. App. 2008); Malik v. State, 953 S.W.2d 234, 240 (Tex. Crim.
App. 1997).  Such a charge would be one
that accurately sets out the law, is authorized by the indictment, does not
unnecessarily restrict the State=s
theories of liability, and adequately describes the particular offense for
which the defendant was tried.  Gollihar
v. State, 46 S.W.3d 243, 253 (Tex. Crim. App. 2001); Malik, 953
S.W.2d at 240.  The law as authorized by
the indictment means the statutory elements of the charged offense as modified
by the charging instrument.  See Curry
v. State, 30 S.W.3d 394, 404 (Tex. Crim. App. 2000).








When reviewing the factual sufficiency of the
evidence to support a conviction, we view all the evidence in a neutral light,
favoring neither party.  Neal v. State,
256 S.W.3d 264, 275 (Tex. Crim. App. 2008), cert. denied, 129 S. Ct.
1037 (2009); Watson v. State, 204 S.W.3d 404, 414 (Tex. Crim. App.
2006).  We then ask whether the evidence
supporting the conviction, although legally sufficient, is nevertheless so weak
that the factfinder=s determination is clearly wrong
and manifestly unjust or whether conflicting evidence so greatly outweighs the
evidence supporting the conviction that the factfinder=s
determination is manifestly unjust.  Lancon
v. State, 253 S.W.3d 699, 704 (Tex. Crim. App. 2008); Watson, 204
S.W.3d at 414B15, 417.  To reverse under the second ground, we must
determine, with some objective basis in the record, that the great weight and
preponderance of all the evidence, though legally sufficient, contradicts the
verdict.  Watson, 204 S.W.3d at
417.








In determining whether the evidence is factually
insufficient to support a conviction that is nevertheless supported by legally
sufficient evidence, it is not enough that this court Aharbor a
subjective level of reasonable doubt to overturn [the] conviction.@  Id. 
We cannot conclude that a conviction is clearly wrong or manifestly
unjust simply because we would have decided differently than the jury or
because we disagree with the jury=s
resolution of a conflict in the evidence. 
Id.  We may not simply
substitute our judgment for the factfinder=s.  Johnson, 23 S.W.3d at 12; Cain v.
State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).  Unless the record clearly reveals that a
different result is appropriate, we must defer to the jury=s
determination of the weight to be given contradictory testimonial evidence
because resolution of the conflict Aoften
turns on an evaluation of credibility and demeanor, and those jurors were in
attendance when the testimony was delivered.@  Johnson, 23 S.W.3d at 8.  Thus, we must give due deference to the
factfinder=s determinations, Aparticularly
those determinations concerning the weight and credibility of the evidence.@  Id. at 9.

An opinion addressing factual sufficiency must
include a discussion of the most important and relevant evidence that supports
the appellant=s complaint on appeal.  Sims v. State, 99 S.W.3d 600, 603
(Tex. Crim. App. 2003).

                                               Burglary

The indictment charged Appellant with burglary of
a habitation when he Adid . . . intentionally or
knowingly, without the effective consent of Ashley Carey, the owner thereof,
enter a habitation with intent to commit theft . . . and did
attempt to commit or commit theft.@  See Tex. Penal Code Ann. ' 30.02(a)(1)
(Vernon Supp. 2008).  The jury found him
guilty Aas
alledged in the indictment.@








                                              Evidence

Ashley Carey Greer was the State=s main
witness at trial.  She testified that she
was alone in the home she shared with her parents one day when she heard
someone knocking at the back door.  Greer
looked through the door=s peephole and saw two men whom
she did not recognize standing at the door and a car parked in the residence=s
carport where it could not be seen from the road.  Greer testified that she did not speak or
otherwise alert the men to her presence because she did not know them.  She said that as she watched though the
peephole, the men knocked on the door a few more times and then wiped their
fingerprints from the metal screen door. 
The men then jiggled the door knob and opened the door, which was not
locked.  Greer testified that she crouched
behind the door as it opened.  Both men
entered the house.  One man, who was
carrying a flashlight, walked into another room of the house, while the other
man, whom Greer identified as Appellant, stood at the door.  Greer testified that the other man told
Appellant to tell someone who was waiting in the car to honk if they saw anyone
coming and that the men would leave through the front door, and Appellant
shouted these instructions to whoever was waiting in the car.








Greer said Appellant eventually closed the door;
when he did so, she stood up to confront him. 
Appellant was startled and said he was looking for his friend AJohn.@  The other man came back into the room and
said that he was looking for his mother. 
The men then left through the same door, got into the car, and drove
away.  Greer testified that she saw two
women in the car with the men.  She wrote
down the car=s license plate number, locked
herself in the bathroom, and telephoned her father.

Greer=s
father, Rick Carey, testified that Greer called him and said someone had tried
to break into their home.  Carey
immediately called 911.

Hood County Deputy Sheriff Clint Pullin testified
that he responded to Carey=s 911
call.  Greer gave him the car=s
license plate number, and a sheriff=s
dispatcher looked up the corresponding address record.  Deputy Pullin went to that address and found
the car.








Hood County Sheriff=s
Investigator Larry Goin testified that he was dispatched to the car=s
location, where another law enforcement officer had already taken Appellant,
another man, and two women into custody. 
Investigator Goin arrested Appellant, took him to the Hood County Law
Enforcement Center, and interviewed him. 
Appellant gave a written statement in which Appellant said that he, his
friend, Joey LeFebvre, his wife, and LeFebvre=s
girlfriend went to a house looking for AJohn@ and
LeFebvre=s
mother; LeFebvre knocked on the door and then went inside as he called, AMom, mom@; a lady
stood up from behind the door and said, ANo John
lives here@; and Appellant called to
LeFebvre, who remarked as they left, AWe must
have the wrong house.@ 
On cross-examination, Investigator Goin testified that LeFebvre had
already been convicted for burglary in connection with the same incident.

                                             Discussion

Appellant argues that the evidence is legally and
factually insufficient to prove that Appellant entered Greer=s
residence with the specific intent to commit theft.  We disagree.








It is well settled in this state that the
question of the intent with which a person unlawfully enters a habitation is a
fact question for the jury to be drawn from the surrounding circumstances.  Moreno v. State, 702 S.W.2d 636, 641
(Tex. Crim. App. 1986); Stearn v. State, 
571 S.W.2d 177, 177 (Tex. Crim. App. [Panel Op.] 1978) (holding evidence
of intent to commit theft sufficient when defendant was found in residence=s
kitchen and immediately fled, even though nothing in house had been
disturbed).  The jury is exclusively
empowered to determine the issue of intent, and the events of a burglary may
imply the intent with which the burglar entered.  Moreno, 702 S.W.2d at 641; Joseph
v. State, 679 S.W.2d 728, 730 (Tex. App.CHouston
[1st Dist.] 1984, no pet.). Furthermore, property need not be taken for proof
of intent to commit theft to be sufficient.  Ortega v. State, 626 S.W.2d 746, 749 (Tex.
Crim. App. [Panel Op.] 1981).

In this case, the evidence shows Appellant and
LeFebvre entered Greer=s house through the back door
without her permission.  They wiped their
fingerprints from the outer, metal screen door. 
Though it was midday, LeFebvre was carrying a flashlight.  Appellant instructed the women in the car to
honk if anyone drove up and said that he and LeFebvre would leave the residence
through the front door.  The car was
parked in the carport where it was concealed from traffic on the public
roadway.  When Greer confronted the men,
they gave conflicting reasons for being in the house; Appellant said they were
looking for AJohn,@ and
LeFebvre said they were looking for LeFebvre=s
mother.  Both stated reasons were
inconsistent with the men=s actions.

Considering the evidence in the light most
favorable to the verdict, we hold a that a rational trier of fact could find
the essential elements of burglary, including intent to commit theft as alleged
in the indictment=s first theory, beyond a
reasonable doubt.  Therefore, the
evidence is legally sufficient.  See
Jackson, 443 U.S. at 319, 99 S. Ct. at 2789.  Considering the evidence in a neutral light,
we also hold that the jury was rationally justified in finding guilt beyond a
reasonable doubt; thus, the evidence was factually sufficient.  See Watson, 204 S.W.3d at 414.  We overrule both of Appellant=s
points.








                                             Conclusion

Having overruled both of Appellant=s
points, we affirm the trial court=s
judgment.

 

ANNE
GARDNER

JUSTICE

 

PANEL:  DAUPHINOT, GARDNER, and MCCOY, JJ.

 

DAUPHINOT, J. filed a
dissenting opinion.

 

PUBLISH

 

DELIVERED:  March 12, 2009











 
 
 
 
 
 
 




 

 

 

 

 

 

                                                COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                 FORT
WORTH

 

 

                                        NO.
2-05-422-CR

 

 

RODGER
LOU GRISSAM                                                       APPELLANT

 

                                                   V.

 

THE
STATE OF TEXAS                                                                STATE

 

                                              ------------

 

              FROM THE 355TH
DISTRICT COURT OF HOOD COUNTY

 

                                              ------------

 

                        DISSENTING OPINION ON
REMAND

 

                                              ------------








Because the majority holds that there is no error
in the case before us, I must respectfully dissent, with all appropriate
consideration to the instructions of the Texas Court of Criminal Appeals.  On remand, the majority holds, in response to
instructions from the Texas Court of Criminal Appeals in Grissam II,[1] that we ignore the application paragraph in
determining the sufficiency of the evidence and consider only the original
indictment and hypothetically correct jury charge.[2]  I believe we are establishing dangerous
precedent in limiting the State=s
ability to determine its own trial strategy. 
The State must not be deprived of its essential authority to determine
the allegations it presents to the jury.

In the case now before this court, the State
abandoned an alternative means of committing the offense of burglary.  The majority, in response to the analysis in Grissam
II, essentially holds that the State is not permitted to abandon an
allegation contained in the indictment by not asking that it be submitted to
the jury or by asking that it not be submitted to the jury.  The charge conference was not recorded, but
the State did not voice any objection to the abandonment of the burglary with
intent to commit theft allegation.  On
original appeal, the State did not argue that it did not intend to abandon that
allegation.  Rather, the State argued
that it had proved the allegation in the indictment that Appellant committed
burglary and did attempt to commit or commit theft.








While it is true, as the Texas Court of Criminal
Appeals recognizes, that generally A[t]he
legal sufficiency of evidence is measured against the requirements for
conviction in a correct charge of the court (as distinguished from the charge
that actually was given),@[3] Malik addressed the problems of a
jury charge that unfairly increased the State=s
burden.[4]  It
did not address the case in which the State=s trial
strategy was to abandon an allegation in the indictment and the trial strategy
did not work to the State=s advantage.[5]

The Texas Court of Criminal Appeals has addressed
the State=s trial strategy in not
requesting a lesser included jury instruction, and a divided court has held
that the State=s decision regarding trial
strategy must be honored.[6]  Judge Hervey wrote,

The issue in this case is
whether an appellate court may reform a trial court=s judgment
to reflect a conviction for an unrequested lesser‑included offense not
submitted to the jury, when the appellate court decides that the evidence is
insufficient to support the jury=s guilty
verdict for the greater offense but is sufficient to support a conviction for
the lesser‑included offense.  We
decide that, under these circumstances, an appellate court may not reform the
trial court=s judgment to reflect a
conviction for the lesser‑included offense.[7]








Fortunately for the prosecution in Brosky v.
State, appellate courts respected its trial strategy and did not try to
revive a theory not presented to the jury.[8]  In his original trial, the jury sentenced
Brosky to ten years= incarceration and recommended
probation in a murder case.  The State
then indicted Brosky for organized criminal activity in the murder of the same
person.  Brosky brought a writ of habeas
corpus arguing double jeopardy, and relief was denied.  In the opinion on appeal from the second
trial, this court noted, A[I]n the murder prosecution, the
jury was not instructed on the conspiratorial theory of parties, nor did the
prosecutor argue that Brosky acted as part of a conspiracy.@[9]  Both convictions stood, and the second jury
sentenced Brosky to forty years=
confinement.  Fortunately for the State,
the prosecution was allowed to determine its own trial strategy, and the
appellate courts did not step in to Afix@ the
prosecution=s Amistake.@








In the case now before this court, the State did
not request a jury instruction on the abandoned allegation.  The State did not object to the jury charge
that did not include the abandoned count. 
The State did not complain on appeal to this court that the abandoned
count should have been submitted to the jury. 
At some point appellate courts must accord lawyers the respect that is
their due and allow them to pursue the trial strategy they deem best.

The Texas Court of Criminal Appeals has now
instructed this court to re-evaluate the sufficiency of the evidence under Malik
by measuring the evidence not against what the jury was asked to weigh, but
against the hypothetically correct charge as measured by the hypothetically
correct indictment.[10]  In this case, what is the hypothetically
correct indictment?  Is it the indictment
before the State abandoned the first paragraph charging burglary with intent to
commit theft, or the indictment as it stood after the State abandoned the first
paragraph?  Or have we been instructed
that the State may no longer abandon an allegation without formally amending
the indictment?  If an appellate court
may not modify a judgment to show conviction for a lesser included offense not
requested or submitted to the jury,[11] may
it nevertheless modify a judgment to show conviction for an abandoned
allegation not submitted to the jury?








The instruction upon which the Texas Court of
Criminal Appeals has instructed this court to rely, and upon which the majority
does rely, is an impermissibly expansive definition of burglary that was not
properly before the jury.[12]  The State not only did not object to the jury
charge; the State, when asked if it had any objections or requested charges,
responded, ANo. Your Honor.@  When a defendant states that he has Ano
objection@ or does not object to the jury
charge, charge error is reversible only if it results in egregious harm.[13]  What
is the effect when the State affirmatively declares that it has no objection to
a jury charge that reflects abandonment of a paragraph of the indictment?

The Malik court recognized the
constitutional implications inherent in a sufficiency review in a footnote,








We recognize that due
process prevents an appellate court from affirming a conviction based upon
legal and factual grounds that were not submitted to the jury.  Perhaps recognizing this principle, the Fifth
Circuit implied that the complete absence of a party=s instruction from the
jury charge may present constitutional problems.  However, we do not believe that due process
is necessarily violated by affirming a conviction in which the jury charge
contains extra, unnecessary elements that are not supported by the
evidence.  Moreover, the Supreme Court
has indicated that the McCormick/Dunn/Cole rule does not bar retrial of
a criminal defendant.[14]

 

So where do Apprendi,[15] Ring,[16] and Blakely [17] fit in? 
The Texas Court of Criminal Appeals explained, 

The Supreme Court
determined in Apprendi v. New Jersey that A[o]ther than the fact of
a prior conviction, any fact that increases the penalty for a crime beyond the
prescribed statutory maximum must be submitted to a jury, and proved beyond a
reasonable doubt.@  As Justice Scalia later explained for the
Supreme Court in Blakely v. Washington, the statutory maximum in this
context means the Amaximum sentence a judge
may impose solely on the basis of the facts reflected in the jury verdict or
admitted by the defendant.@  Thus, the
Apprendi line of cases requires that, in any case in which the defendant
has elected to exercise his Sixth Amendment right to a jury trial, any discrete
finding of fact that has the effect of increasing the maximum punishment that
can be assessed must be made by the jury, even if that fact‑finding
occurs as part of the punishment determination.

 








The appellant relies on this determination by Apprendi and its
progeny that a sentence cannot be greater than that authorized by the jury=s fact‑finding.  But these cases hold that a trial court is
prohibited from unilaterally increasing individual sentences on the basis of
facts that were not resolved by the jury. 
Thus, Apprendi and its progeny clearly deal with the upper‑end
extension of individual sentences, when that extension is contingent upon
findings of fact that were never submitted to the jury.[18]

 








In the case now before this court, the common
element of the first and second paragraphs of the indictment was entry into a
habitation without the effective consent of the owner.  That is, the common element was criminal
trespass.[19]  Only the second paragraph was submitted to
the jury, and the jury did return a verdict on the issue of criminal trespass,
a misdemeanor.[20]  What makes criminal trespass a burglary and,
therefore, a felony, is the theft element. 
There was no evidence that Appellant committed theft or attempted to
commit theft.  Yet this was the issue
submitted to the jury that converted the misdemeanor criminal trespass into a
felony.  The jury was never asked to
consider evidence that Appellant entered the house with intent to commit
theft.  That is, the question of intent
to commit theftCthe Adiscrete
finding of fact that has the effect of increasing the maximum punishment that
can be assessed@[21]Cwas
never submitted to the jury even though the Apprendi line of cases makes
it clear that such a determination Amust be
made by the jury.@[22]

There is ample evidence that Appellant committed
criminal trespass.  But what is the
evidence of any intent to commit theft? 
Is it a default position?  Is it a
presumption?  Is any entry into a
habitation without the effective consent of the owner a burglary with intent to
commit theft unless the defendant disproves this presumption?  It was daytime, not nighttime.  There was no evidence of any plan to commit
theft or any attempt to commit theft.  We
can only speculate, and the jury could only speculate, regarding Appellant=s intent
in entering the house.

As we stated in our original opinion, reiterating
well-established law,

The application paragraph of a jury charge is
that which authorizes conviction, and an abstract charge on a theory of law
which is not applied to the facts is insufficient to bring that theory before
the jury.  In the absence of an
application paragraph incorporating a theory recited in the abstract portion, a
jury is not authorized to convict on that theory.[23]








Similarly, the Texas Court of Criminal Appeals
has repeatedly held, AThe application paragraph of a
jury charge is that which authorizes conviction, and an abstract charge on a
theory of law which is not applied to the facts is insufficient to bring that
theory before the jury.@[24] 

The issue in Malik was a

jury instruction concerning the legality of
appellant=s detention [that] should not
have been used to measure the sufficiency of the evidence.  The legality of appellant=s
detention is not an element of the offense charged but merely relates to the
admissibility of evidence.  Moreover, a
hypothetically correct jury charge would not have made the admissibility of a
particular piece of evidence a precondition for conviction.[25] 








Did the Malik court intend to abrogate the
requirement of an application paragraph that submitted to the jury all the
elements of the offense of which the jury convicts?[26]  Does
Texas law no longer require an application paragraph?[27]  Is
the State=s abandonment of a paragraph or
count of the indictment no longer permitted? 
In the case now before this court, the jury did not find the elements of
the offense of burglary with intent to commit theft.  Is this now charge error, and should we apply
an Almanza analysis?[28]

I believe that Malik has been expanded far
beyond what is constitutionally permissible. 
When a defendant or the State in a criminal case demands to have a jury
try the case, the jury returns a verdict only as to the offenses submitted to
it in the application paragraph, according to the applicable provisions of the
Texas Code of Criminal Procedure.  In her
dissent to the majority opinion in Dougherty v. State,[29] Judge Keller explains the necessary
interplay between the definitional portion of a jury charge in a criminal case
and the application paragraph:  

In PatrickCa case with a similar
jury charge errorCthis Court limited its
harm analysis in just the way that the Court of Appeals did in this case.  We looked no further than the application
paragraph to determine that the charge error in that case was harmless.  In Medina we did look at other
factors, but along the way we cited to Plata v. State.  In Plata, we considered the reverse
problem:  a correct abstract instruction
in a jury charge that lacked a proper application paragraph.  In concluding that the error was not cured by
the abstract instruction, this Court said:

 








[A]bstract or definitional
paragraphs serve as a kind of glossary to help the jury understand the meaning
of concepts and terms used in the application paragraphs of the charge
. . . .  The inclusion of a
merely superfluous abstraction, therefore, never produces reversible error in
the court=s charge because it has
no effect on the jury=s ability fairly and
accurately to implement the commands of the application paragraph or
paragraphs.[30]

 

Definitions limit the jury=s
consideration to the facts of the case, but they impose no temporal or
geographic limitations and restrict consideration to no named persons.  That is why the application paragraph is
required.  The jury must find all the
elements of the offense, including culpable mental state, geographic location,
guilty acts, and persons named.[31]  The definitions do not incorporate the
required elements set out in the indictment.








I believe that minimal constitutional due process
protections require that in a jury trial, the jury must find not the abstract
elements of the offense, but the acts alleged in indictment.  When the State abandons an allegation, it is
no longer available to be reclaimed under Malik.  If the State=s
abandonment of the wrong allegation does not render the proof insufficient,
which I believe it does in this case, it must at least constitute charge error
under these facts because the offense described in the definition section of
the jury charge was not the 

offense submitted in the application paragraph.  For these reasons, I must respectfully
dissent from the majority=s opinion.

 

 

LEE
ANN DAUPHINOT

JUSTICE

 

PUBLISH

DELIVERED:   March 12, 2009











[1]See Tex. R. App. P. 47.4.





[1]Grissam v. State, 267 S.W.3d 39, 41 (Tex.
Crim. App. 2008).





[2]Majority op. at 2, 3.





[3]Grissam II, 267 S.W.3d at 40
(quoting Malik v. State, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)).





[4]Malik, 953 S.W.2d at 235, 240.





[5]See id. at 234B40.





[6]Haynes v. State, 273 S.W.3d 183, 184
(Tex. Crim. App. 2008).





[7]Id.





[8]Brosky v. State, 915 S.W.2d 120, 140
(Tex. App.CFort Worth, pet. ref=d), cert. denied,
519 U.S. 1020 (1996).





[9]Id. (citing Ex parte
Brosky, 863 S.W.2d 783, 785 (Tex. App.CFort Worth 1993, no pet.)).





[10]See Grissam II, 267 S.W.3d at 40
(quoting Malik, 953 S.W.2d at 240); Fuller v. State, 73 S.W.3d
250, 260 (Tex. Crim. App. 2002) (Womack, J., concurring) (AThe court of appeals
found it unclear whether Malik would use a hypothetically correct jury
charge that was based on a hypothetically correct indictment or one that was
based on the actual indictment.@); Rosales v. State, 4 S.W.3d 228, 235 n.3
(Tex. Crim. App. 1999) (Meyers, J., concurring) (ABy extending Malik
to the context presented in this case, the majority appears to have created a >hypothetically correct
indictment= doctrine.@), cert. denied,
531 U.S. 1016 (2000).





[11]Haynes, 273 S.W.3d at 184.





[12]See Plunkett v. Estelle, 709 F.2d 1004, 1009 (5th
Cir. 1983), cert. denied, McKaskle v. Plunkett, 465 U.S. 1007
(1984); see, e.g., Cook v. State, 884 S.W.2d 485, 491
(Tex. Crim. App. 1994) (AIt is error for a trial
judge to not limit the definitions of the culpable mental states as they relate
to the conduct elements involved in the particular offense.@).





[13]Almanza v. State, 686 S.W.2d 157, 171
(Tex. Crim. App. 1985) (op. on reh=g); see Tex. Code Crim. Proc. Ann. art.
36.19 (Vernon 2006); Allen v. State, 253 S.W.3d 260, 264 (Tex. Crim.
App. 2008); Hutch v. State, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996). 





[14]Malik, 953 S.W.2d at 238 n.3
(citations omitted).





[15]Apprendi v. New Jersey, 530 U.S. 466, 120 S.
Ct. 2348 (2000).





[16]Ring v. Arizona, 536 U.S. 584, 122 S.
Ct. 2428 (2002).





[17]Blakely v. Washington, 542 U.S. 296, 124 S.
Ct. 2531 (2004). 





[18]Barrow v. State, 207 S.W.3d 377, 379
(Tex. Crim. App. 2006) (citations omitted).





[19]See Tex. Penal Code Ann. ' 30.05(a) (Vernon
Supp. 2008).





[20]See id. ' 30.05(d).





[21]Barrow, 207 S.W.3d at 379.





[22]Id.





[23]Grissam v. State (Grissam
I), No.
02-05-00422-CR, 2007 WL 2405122, at *3 (Tex. App.CFort Worth Aug. 24, 2007)
(citations omitted), rev=d, 267 S.W.3d at 41.





[24]McFarland v. State, 928 S.W.2d 482, 515
(Tex. Crim. App. 1996), cert. denied, 519 U.S. 1119 (1997).





[25]Malik, 953 S.W.2d at 240.





[26]See Tex. Code Crim. Proc.
Ann. art. 38.04 (Vernon 1979) (providing jury is exclusive judge of facts).





[27]See id. arts. 36.13 (providing
jury is exclusive judge of facts); 36.14 (providing that judge shall deliver to
jury a Awritten charge distinctly
setting forth the law applicable to the case@) (emphasis added); 36.19
(providing for our review of charge error) (Vernon 2006).





[28]Almanza, 686 S.W.2d at 171B72.





[29]Dougherty v. State, 188 S.W.3d 670 (Tex.
Crim. App. 2006) (Keller, J., dissenting).





[30]Id. at 671 (citations
omitted).





[31]Swearingen v. State, 101 S.W.3d 89, 103
(Tex. Crim. App. 2003) (Johnson, J., dissenting) (A[T]he reviewing court
must remain cognizant that the state always carries the burden of proof to
establish each and every element of a criminal offense at trial.@).