

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-10-00135-CR

CARLOS JONATHAN ARRANAGA
A/K/A CARLOS ARRANAGA

APPELLANT

V.

THE STATE OF TEXAS

STATE

----------

FROM CRIMINAL DISTRICT COURT NO. 1 OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

A jury convicted Appellant Carlos Jonathan Arranaga a/k/a Carlos Arranaga of aggravated assault with a deadly weapon, to wit: a firearm, and assessed his punishment at five years' confinement. Appellant brings a single issue on appeal, challenging the legal sufficiency of the evidence to support his

---

[1]*See* Tex. R. App. P. 47.4.

conviction. Because we hold that the evidence is sufficient under the standard enunciated by *Jackson v. Virginia*,[2] we affirm the trial court's judgment.

**Statement of Facts**

Isaac Payen and Maryella Longoria worked together at a Fiesta Food Mart store in Fort Worth. Longoria's boyfriend, Appellant, attended high school with Payen. Payen testified at trial that he and Longoria were friends; Appellant testified that Longoria would ask Payen to leave her alone and that Payen would not listen.

On July 15, 2009, Longoria told Payen that she thought she was pregnant and that Appellant was the father. In response, Payen told her that Appellant "better not be" the father "because he's no good, he is like a low life." Payen's statement upset Longoria, who called Appellant, crying. Appellant testified that Longoria told him that Payen "kept bothering her, wouldn't leave her alone."

Appellant's friend Arturo Zaragoza testified that he gave Appellant a ride to Fiesta that night because Appellant wanted to talk to Payen. Zaragoza testified that Appellant stated that he wanted to scare Payen. Zaragoza also testified that he had given Appellant a gun three days before because Appellant wanted to show it to his father. Appellant testified that Zaragoza only gave him the gun when he got in Zaragoza's truck that day, and Appellant denied telling Zaragoza that he wanted to scare Payen.

---

[2] 443 U.S. 307, 99 S. Ct. 2781 (1979).

When Appellant and Zaragoza arrived at Fiesta, Payen was leaving in his car. Zaragoza stopped his truck at a stop sign next to Payen's car so that Appellant, sitting in the passenger seat, was next to Payen's driver's side window. Appellant told Payen that he "thought [he and Payen] had already . . . settled this, . . . you know," and asked Payen, "[W]hy you still, you know, messing with my girlfriend?" Zaragoza testified that Payen and Appellant exchanged words until Zaragoza pulled away. When Payen turned down the street where Longoria lived, Appellant asked Zaragoza to follow him. Payen's car was stopped in the street, and Zaragoza stopped his truck behind Payen's car.

Zaragoza testified that after a while, Payen got out of his car, approached Zaragoza's truck, and told Appellant to get out of the truck so that they could "settle this," but Appellant told Payen that he did not want to fight. Zaragoza stated that Payen threw a punch at Appellant while Appellant was still in the truck. Appellant testified that Payen grabbed him by the shirt and that he showed Payen the gun so that Payen would let go of him. Zaragoza testified that Payen grabbed Appellant by his hand and that Appellant and Payen struggled over the gun. Zaragoza stated that the gun was in Appellant's hand when it was fired but that he could not see whose finger was on the trigger. The gun went off, shooting Payen in the chest.

Zaragoza drove away, with Appellant still in the passenger seat of his truck, and Appellant called Longoria and asked her to call 911. Zaragoza drove to the Trinity River, and Appellant threw the gun into the river.

3

Payen testified at trial that because of his injury, he had had a stroke, and as a result, he could not remember what happened that evening.

**Sufficiency of the Evidence**

As Appellant points out, the indictment in this case contained two counts, the first count alleging that Appellant intentionally or knowingly caused bodily injury to the complainant, Payen, by shooting him with a firearm, and the second count alleging that Appellant threatened bodily injury to Payen by using or exhibiting a deadly weapon, a firearm. Both counts were submitted to the jury in a single application paragraph, and a single verdict form allowed the jury to convict under either Count One or Count Two.

The evidence also reflects that the State offered immunity to Zaragoza, the person who provided the gun and drove Appellant to confront Payen. No accomplice witness instruction was either provided to the jury or requested. Appellant did request a self-defense instruction, which was denied.

On appeal, however, Appellant makes no complaints about the jury charge, raising only what he styles as a legal sufficiency challenge. For these reasons, we address only the sufficiency question.

The Texas Court of Criminal Appeals has held that there is no meaningful distinction between the legal sufficiency standard and the factual sufficiency standard.[3] Thus, the *Jackson* standard, which is explained below, is the "only

---

[3]*Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (overruling *Clewis v. State*, 922 S.W.2d 126, 131–32 (Tex. Crim. App. 1996)).

standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt."[4]

The sufficiency of the evidence in a criminal case is not determined by a no-evidence standard.[5]  Instead, in our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the prosecution to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[6]

Appellant divides his argument into an analysis of the sufficiency of the evidence to convict under Count One of the indictment and an analysis of the sufficiency of the evidence to convict under Count Two of the indictment.  When the jury is authorized to convict on any one of several theories or methods of the commission of the same offense (for example, two different statutory definitions of the same offense) and returns a general verdict of guilt, it does not matter that the evidence is insufficient to sustain one or more of the theories, so long as the evidence is sufficient to sustain conviction under at least one theory.[7]  Because

---

[4]*Id.*

[5]*Butler v. State*, 769 S.W.2d 234, 239 (Tex. Crim. App. 1989), *overruled on other grounds by Geesa v. State,* 820 S.W.2d 154, 161 (Tex. Crim. App. 1991), *overruled on other grounds by Paulson v. State,* 28 S.W.3d 570, 571 (Tex. Crim. App. 2000).

[6]*Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

[7]*Grissam v. State*, 267 S.W.3d 39, 41 (Tex. Crim. App. 2008); *Swearingen v. State*, 101 S.W.3d 89, 95 (Tex. Crim. App. 2003) (citing *Rabbani v. State*, 847

the jury was instructed in a single application paragraph and provided a single verdict form on which to find Appellant guilty of aggravated assault as alleged in the indictment, rather than a verdict form on each count, we address sufficiency of the evidence under the standard that requires us to convict if the evidence is sufficient as to either theory, as though they had been pled in a single count with two paragraphs rather than two separate counts.

The witnesses in the case included Appellant, Zaragoza, and Payen, as well as various police officers. The evidence reflects that Appellant armed himself and sought out Payen, who was unarmed. Detective Shane Drake testified that Appellant told him that Payen had grabbed his arm, pulled at him, and swung at him but missed. In response, Appellant pulled the gun, and the gun went off.

Detective Drake testified that Appellant did not ever state that Payen had actually gotten hold of the gun or even had his hand on the gun. Detective Drake also testified that Appellant never told him that Payen had a gun, a knife, or any kind of sharp instrument when he approached Appellant. Indeed, the detective testified that Appellant told him that from what he saw, Payen had no type of weapon.

The jury heard the testimony that Appellant had gone to look for Payen, had armed himself, and had told Payen that he did not want to fight; that the two

S.W.2d 555, 558–59 (Tex. Crim. App. 1992), *cert. denied*, 509 U.S. 926 (1993)); *see also Jefferson v. State*, 189 S.W.3d 305, 311–13 (Tex. Crim. App.), *cert. denied*, 549 U.S. 957 (2006).

men had words; that Appellant had told Zaragoza to follow Payen down the street to where Longoria lived; that Zaragoza had stopped his truck behind Payen's car; and that Payen had gotten out of his car and confronted Appellant, telling him to get out of the truck so they could "settle this," but that Appellant had told Payen that he did not want to fight. The jury also heard that Payen threw a punch at Appellant while Appellant was still in the truck, that Payen had grabbed Appellant by the shirt, and that Appellant had shown Payen the gun to convince Payen to let go of him. The jury heard testimony that Payen grabbed Appellant, the two struggled over the gun, and the gun went off, but the jury heard no testimony as to who actually fired the gun. Even excluding Zaragoza's evidence, Appellant himself provided sufficient evidence at trial and to the police to sustain his conviction.[8]

From the evidence before the jury, the jury could have reasonably concluded that Appellant threatened Payen with the firearm. There was also evidence that the firearm in Appellant's hand was fired, injuring Payen. The jury could have concluded from the evidence that Appellant pulled the trigger, causing the gun to fire.

As the sole trier of fact, it was the jury's obligation to determine the credibility of the witnesses and the weight to be placed on the testimony of each

---

[8]*See* Tex. Code Crim. Proc. Ann. art. 38.14 (Vernon 2005) ("A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense.").

witness.[9]  The jury was free to believe all, some, or none of the testimony of each of the witnesses.[10]  If the evidence is sufficient to prove one theory of conviction, the evidence is sufficient to support the conviction, even when multiple theories are offered to the jury.[11]

**Conclusion**

Because the evidence is legally sufficient to support the jury's verdict that Appellant was guilty of aggravated assault with a deadly weapon, we overrule Appellant' sole issue and affirm the trial court's judgment.

LEE ANN DAUPHINOT
JUSTICE

PANEL:  DAUPHINOT, GARDNER, and MEIER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  April 21, 2011

---

[9]*See* Tex. Code Crim. Proc. Ann. art. 38.04 (Vernon 1979); *Brown v. State*, 270 S.W.3d 564, 568 (Tex. Crim. App. 2008), *cert. denied*, 129 S. Ct. 2075 (2009).

[10]*See Prible v. State*, 175 S.W.3d 724, 730–31 (Tex. Crim. App.), *cert. denied*, 546 U.S. 962 (2005); *Sorto v. State*, 173 S.W.3d 469, 475 (Tex. Crim. App. 2005), *cert. denied*, 548 U.S. 926 (2006).

[11]*Grissam*, 267 S.W.3d at 41.