02-10-135-CR









 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

NO. 02-10-00135-CR

 

 


 
 
 Carlos Jonathan Arranaga a/k/a Carlos Arranaga
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE
 
 


 

 

----------

FROM Criminal
District Court No. 1 OF Tarrant COUNTY

----------

MEMORANDUM
OPINION[1]

----------

A
jury convicted Appellant Carlos Jonathan Arranaga a/k/a Carlos Arranaga of
aggravated assault with a deadly weapon, to wit: a firearm, and assessed his
punishment at five years’ confinement.  Appellant brings a single issue on appeal,
challenging the legal sufficiency of the evidence to support his conviction. 
Because we hold that the evidence is sufficient under the standard enunciated
by Jackson v. Virginia,[2] we affirm the trial
court’s judgment.

Statement
of Facts

Isaac
Payen and Maryella Longoria worked together at a Fiesta Food Mart store in Fort
Worth.  Longoria’s boyfriend, Appellant, attended high school with Payen. 
Payen testified at trial that he and Longoria were friends; Appellant testified
that Longoria would ask Payen to leave her alone and that Payen would not
listen.

On
July 15, 2009, Longoria told Payen that she thought she was pregnant and that
Appellant was the father.  In response, Payen told her that Appellant “better
not be” the father “because he’s no good, he is like a low life.”  Payen’s
statement upset Longoria, who called Appellant, crying.  Appellant testified
that Longoria told him that Payen “kept bothering her, wouldn’t leave her alone.”

Appellant’s
friend Arturo Zaragoza testified that he gave Appellant a ride to Fiesta that
night because Appellant wanted to talk to Payen.  Zaragoza testified that
Appellant stated that he wanted to scare Payen.  Zaragoza also testified that
he had given Appellant a gun three days before because Appellant wanted to show
it to his father.  Appellant testified that Zaragoza only gave him the gun when
he got in Zaragoza’s truck that day, and Appellant denied telling Zaragoza that
he wanted to scare Payen.

When
Appellant and Zaragoza arrived at Fiesta, Payen was leaving in his car. 
Zaragoza stopped his truck at a stop sign next to Payen’s car so that
Appellant, sitting in the passenger seat, was next to Payen’s driver’s side
window.  Appellant told Payen that he “thought [he and Payen] had already . . .
settled this, . . . you know,” and asked Payen, “[W]hy you
still, you know, messing with my girlfriend?”  Zaragoza testified that Payen
and Appellant exchanged words until Zaragoza pulled away.  When Payen turned
down the street where Longoria lived, Appellant asked Zaragoza to follow him. 
Payen’s car was stopped in the street, and Zaragoza stopped his truck behind
Payen’s car.

Zaragoza
testified that after a while, Payen got out of his car, approached Zaragoza’s
truck, and told Appellant to get out of the truck so that they could “settle
this,” but Appellant told Payen that he did not want to fight.  Zaragoza stated
that Payen threw a punch at Appellant while Appellant was still in the truck. 
Appellant testified that Payen grabbed him by the shirt and that he showed
Payen the gun so that Payen would let go of him.  Zaragoza testified that Payen
grabbed Appellant by his hand and that Appellant and Payen struggled over the
gun.  Zaragoza stated that the gun was in Appellant’s hand when it was fired
but that he could not see whose finger was on the trigger.  The gun went off,
shooting Payen in the chest.

Zaragoza
drove away, with Appellant still in the passenger seat of his truck, and
Appellant called Longoria and asked her to call 911.  Zaragoza drove to the
Trinity River, and Appellant threw the gun into the river.

Payen testified at trial that because of his injury, he
had had a stroke, and as a result, he could not remember what happened that
evening.

Sufficiency
of the Evidence

As
Appellant points out, the indictment in this case contained two counts, the
first count alleging that Appellant intentionally or knowingly caused bodily
injury to the complainant, Payen, by shooting him with a firearm, and the
second count alleging that Appellant threatened bodily injury to Payen by using
or exhibiting a deadly weapon, a firearm.  Both counts were submitted to the
jury in a single application paragraph, and a single verdict form allowed the
jury to convict under either Count One or Count Two.

The
evidence also reflects that the State offered immunity to Zaragoza, the person
who provided the gun and drove Appellant to confront Payen.  No accomplice
witness instruction was either provided to the jury or requested.  Appellant
did request a self-defense instruction, which was denied.

On
appeal, however, Appellant makes no complaints about the jury charge, raising
only what he styles as a legal sufficiency challenge.  For these reasons, we
address only the sufficiency question.

The Texas
Court of Criminal Appeals has held that there is no meaningful distinction
between the legal sufficiency standard and the factual sufficiency standard.[3] 
Thus, the Jackson standard, which is explained below, is the “only
standard that a reviewing court should apply in determining whether the
evidence is sufficient to support each element of a criminal offense that the
State is required to prove beyond a reasonable doubt.”[4]

The
sufficiency of the evidence in a criminal case is not determined by a
no-evidence standard.[5] 
Instead, in our due-process review of the sufficiency of the evidence to
support a conviction, we view all of the evidence in the light most favorable
to the prosecution to determine whether any rational trier of fact could have
found the essential elements of the crime beyond a reasonable doubt.[6]

Appellant
divides his argument into an analysis of the sufficiency of the evidence to
convict under Count One of the indictment and an analysis of the sufficiency of
the evidence to convict under Count Two of the indictment.  When the jury is
authorized to convict on any one of several theories or methods of the
commission of the same offense (for example, two different statutory
definitions of the same offense) and returns a general verdict of guilt, it
does not matter that the evidence is insufficient to sustain one or more of the
theories, so long as the evidence is sufficient to sustain conviction under at
least one theory.[7]  Because the jury was
instructed in a single application paragraph and provided a single verdict form
on which to find Appellant guilty of aggravated assault as alleged in the
indictment, rather than a verdict form on each count, we address sufficiency of
the evidence under the standard that requires us to convict if the evidence is
sufficient as to either theory, as though they had been pled in a single count
with two paragraphs rather than two separate counts.

The
witnesses in the case included Appellant, Zaragoza, and Payen, as well as
various police officers.  The evidence reflects that Appellant armed himself
and sought out Payen, who was unarmed.  Detective Shane Drake testified that
Appellant told him that Payen had grabbed his arm, pulled at him, and swung at
him but missed.  In response, Appellant pulled the gun, and the gun went off.

Detective
Drake testified that Appellant did not ever state that Payen had actually
gotten hold of the gun or even had his hand on the gun.  Detective Drake also
testified that Appellant never told him that Payen had a gun, a knife, or any
kind of sharp instrument when he approached Appellant.  Indeed, the detective
testified that Appellant told him that from what he saw, Payen had no type of
weapon.

The
jury heard the testimony that Appellant had gone to look for Payen, had armed
himself, and had told Payen that he did not want to fight; that the two men had
words; that Appellant had told Zaragoza to follow Payen down the street to
where Longoria lived; that Zaragoza had stopped his truck behind Payen’s car; and
that Payen had gotten out of his car and confronted Appellant, telling him to
get out of the truck so they could “settle this,” but that Appellant had told Payen
that he did not want to fight.  The jury also heard that Payen threw a punch at
Appellant while Appellant was still in the truck, that Payen had grabbed
Appellant by the shirt, and that Appellant had shown Payen the gun to convince
Payen to let go of him.  The jury heard testimony that Payen grabbed Appellant,
the two struggled over the gun, and the gun went off, but the jury heard no
testimony as to who actually fired the gun.  Even excluding Zaragoza’s
evidence, Appellant himself provided sufficient evidence at trial and to the
police to sustain his conviction.[8]

From
the evidence before the jury, the jury could have reasonably concluded that
Appellant threatened Payen with the firearm.  There was also evidence that the
firearm in Appellant’s hand was fired, injuring Payen.  The jury could have
concluded from the evidence that Appellant pulled the trigger, causing the gun
to fire.

As
the sole trier of fact, it was the jury’s obligation to determine the
credibility of the witnesses and the weight to be placed on the testimony of
each witness.[9]  The jury was free to
believe all, some, or none of the testimony of each of the witnesses.[10] 
If the evidence is sufficient to prove one theory of conviction, the evidence
is sufficient to support the conviction, even when multiple theories are
offered to the jury.[11]

Conclusion

Because
the evidence is legally sufficient to support the jury’s verdict that Appellant
was guilty of aggravated assault with a deadly weapon, we overrule Appellant’
sole issue and affirm the trial court’s judgment.

 

 

LEE ANN DAUPHINOT
JUSTICE

 

PANEL: 
DAUPHINOT,
GARDNER, and MEIER, JJ.

 

DO
NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED:  April 21, 2011









[1]See Tex. R. App. P. 47.4.





[2]443 U.S. 307,  99 S. Ct.
2781 (1979).





[3]Brooks v. State, 323
S.W.3d 893, 912 (Tex. Crim. App. 2010) (overruling Clewis v. State, 922
S.W.2d 126, 131–32 (Tex. Crim. App. 1996)).





[4]Id.





[5]Butler v. State, 769 S.W.2d 234, 239
(Tex. Crim. App. 1989), overruled
on other grounds by Geesa v. State, 820 S.W.2d 154, 161 (Tex. Crim.
App. 1991), overruled on
other grounds by Paulson v. State, 28 S.W.3d 570, 571 (Tex. Crim. App.
2000).





[6]Jackson, 443 U.S. at
319, 99 S. Ct. at 2789; Clayton v. State, 235 S.W.3d 772, 778 (Tex.
Crim. App. 2007).





[7]Grissam v. State,
267 S.W.3d 39, 41 (Tex. Crim. App. 2008); Swearingen v. State, 101
S.W.3d 89, 95 (Tex. Crim. App. 2003) (citing Rabbani v. State, 847
S.W.2d 555, 558–59 (Tex. Crim. App. 1992), cert. denied, 509 U.S. 926
(1993)); see also Jefferson v. State, 189 S.W.3d 305, 311–13 (Tex. Crim.
App.), cert. denied, 549 U.S. 957 (2006).





[8]See Tex. Code Crim.
Proc. Ann. art. 38.14 (Vernon 2005) (“A conviction cannot be had upon the
testimony of an accomplice unless corroborated by other evidence tending to
connect the defendant with the offense committed; and the corroboration is not
sufficient if it merely shows the commission of the offense.”).





[9]See Tex. Code Crim.
Proc. Ann. art. 38.04 (Vernon 1979); Brown v. State, 270 S.W.3d 564, 568
(Tex. Crim. App. 2008), cert. denied, 129 S. Ct. 2075 (2009).





[10]See Prible v. State,
175 S.W.3d 724, 730–31 (Tex. Crim. App.), cert. denied, 546 U.S. 962
(2005); Sorto v. State, 173 S.W.3d 469, 475 (Tex. Crim. App. 2005), cert.
denied, 548 U.S. 926 (2006).





[11]Grissam, 267
S.W.3d at 41.