

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

### NOS. 02-11-00001-CR
### 02-11-00002-CR

JEFFREY CHARLES STINSON                                                    APPELLANT

V.

THE STATE OF TEXAS                                                                  STATE

------------

## FROM THE 271ST DISTRICT COURT OF WISE COUNTY

------------

## MEMORANDUM OPINION[1]

------------

## I. Introduction

In one issue, Appellant Jeffrey Charles Stinson appeals his convictions for possession of a controlled substance in an amount of one gram or more but less than four grams, and possession or transport of anhydrous ammonia with intent to manufacture a controlled substance.  We affirm.

---

[1]*See* Tex. R. App. P. 47.4.

## II. Factual and Procedural Background

On November 16, 2008, Caleb Smith committed a traffic violation while leaving a pasture where evidence of methamphetamine production was later discovered; instead of stopping after the traffic violation, he fled from the police. Stinson was Smith's passenger. The police arrested both men after an extensive car chase.

Police found anhydrous ammonia in an improper receptacle in the vehicle's trunk and recovered a white plastic pitcher containing 1.04 grams of methamphetamine that had been thrown from the vehicle's passenger window during the chase. The officer who had pursued the vehicle after the initial traffic violation stated that at one point, he saw the passenger's hand come out of the vehicle and appear to pat the vehicle's roof in encouragement to the driver to keep going and to speed up.

The vehicle's interior smelled like ether and had a police scanner and binoculars on the front passenger seat. It had a box of Morton's salt, a container of sulfuric acid, some blue paper towels, and Mason-style jars containing a clear liquid behind the front passenger's seat. In addition to the improperly stored anhydrous ammonia, the trunk contained a backpack, which held a pan with white residue, a wooden spoon, a white plastic tube with some crystalline residue that revealed trace amounts of methamphetamine, some sandwich bags, a

coffee grinder containing a thick white powder,[2] a blue paper towel showing pink residue,[3] lithium batteries, and a can of ether-based starter fluid.[4]

The vehicle also contained some Wal-Mart receipts, and one of the officers went to Wal-Mart to "track down" more information about the white plastic pitcher and the box of salt. The officer also checked with the Wal-Mart pharmacy and learned that on November 15—the day before the chase—Stinson had purchased a box of Sudafed, which contained 2.4 grams of pseudoephedrine and could be used to produce methamphetamine. The officer then crossed the parking lot to Walgreen's, checked Walgreen's pharmacy records, and discovered that Stinson had purchased two boxes of Wal-phed tablets, each containing forty-eight red tablets and 1.44 grams of pseudoephedrine, on the same day. He did not find any drug purchases by Smith at Walgreen's or Wal-Mart. A buyer is restricted to the purchase of two boxes of pseudoephedrine from one store and must show photo identification.

Stinson was charged with possessing or transporting anhydrous ammonia with intent to unlawfully manufacture methamphetamine and possession of

---

[2]A methamphetamine "cook" will grind pseudoephedrine pills in a blender or coffee grinder before soaking them in ether.

[3]Pseudoephedrine pills are often red; one of the officers opined that the pink residue on the towel was from such pills.

[4]Ether, anhydrous ammonia, salt, sulfuric acid, and lithium are used to produce methamphetamine from pseudoephedrine.

methamphetamine in the amount of one gram or more but less than four grams; he pleaded not guilty to both charges.[5]

During the defense's case at trial, Smith testified that he had been convicted and incarcerated for possession of certain chemicals with intent to manufacture a controlled substance, possession with intent to distribute, and possession, as well as evading arrest, based on the same events of November 16. Smith admitted that the tank found in his vehicle contained anhydrous ammonia but denied that he had been in the pasture where officers found evidence of methamphetamine production, even though the officer who initially pursued him stated that Smith's vehicle had turned from that pasture onto the road in front of him.

Smith acknowledged that the items found by the police in his vehicle were his, but he claimed that his vehicle had no odors. He stated that Stinson did not give him any Sudafed tablets, but he also stated that he could not have purchased pseudoephedrine himself, stating, "I don't got no ID, so I didn't buy no pseudoephedrine or anything." Smith claimed that Stinson was innocent, that Stinson did not encourage him to keep driving by beating on the roof of the car, that Stinson did not throw anything from the passenger window, and that Stinson did not assist him in any way in setting up or taking down a drug lab and putting it in the car or in making methamphetamine, although he admitted that he did not

---

[5]Prior to the commencement of trial, the State abandoned the "intent to deliver" language in its possession of methamphetamine indictment.

tell the police in the two years before trial that Stinson had been wrongfully charged.

The trial court included an instruction on the law of parties in both jury charges. The jury found Stinson guilty in both cases and sentenced him to twelve years' confinement and a $2,000 fine in the anhydrous ammonia case and to five years' confinement and a $1,000 fine in the possession case. The trial court set the sentences to run concurrently. This appeal followed.

### III. Sufficiency

In his sole issue, Stinson contends that the evidence is insufficient to support his two convictions.

A person commits a third-degree felony offense if he knowingly or intentionally possesses methamphetamine in the amount of one gram or more but less than four grams. *See* Tex. Health & Safety Code Ann. § 481.115(c) (West 2010); *see also id.* § 481.102(6) (West 2010). He commits a second-degree felony offense if, with intent to unlawfully manufacture methamphetamine, he possesses or transports anhydrous ammonia. *See id.* § 481.124(a)(1), (d) (West 2010). An intent to unlawfully manufacture methamphetamine is presumed if the actor possesses or transports anhydrous ammonia in a container or receptacle that is not designed and manufactured to lawfully hold or transport anhydrous ammonia. *Id*. § 481.124(b)(1). Further, a party is criminally responsible for an offense committed by the conduct of another if, acting with intent to promote or assist the commission of the offense, he solicits,

5

encourages, directs, aids, or attempts to aid the other person to commit the offense. Tex. Penal Code Ann. § 7.02(a)(2) (West 2011). In reviewing the sufficiency of the evidence, we should look at "'events occurring before, during and after the commission of the offense and may rely on actions of the defendant which show an understanding and common design to do the prohibited act.'" *Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004) (quoting *Cordova v. State*, 698 S.W.2d 107, 111 (Tex. Crim. App. 1985), *cert. denied*, 476 U.S. 1101 (1986)).

Stinson addresses only the sufficiency of the evidence to show that he "had exclusive control, management, care[,] or dominion over either the controlled substance or anhydrous ammonia" and argues that the evidence did not establish affirmative links between him and the methamphetamine or anhydrous ammonia. He does not challenge the other basis for the jury's verdicts—that he was a party to the two offenses by aiding or attempting to aid another person in committing the offenses with the intent to promote or assist the commission of the offenses.

When the jury is authorized to convict on alternative theories, the verdict of guilt will be upheld if the evidence is sufficient on any one of the theories. *Sorto v. State*, 173 S.W.3d 469, 472 (Tex. Crim. App. 2005), *cert. denied,* 548 U.S. 926 (2006); *see also Grissam v. State*, 267 S.W.3d 39, 41 (Tex. Crim. App. 2008). Having reviewed the evidence, as set out above, in the light most favorable to the verdict, we conclude that the jury could have found the essential elements of the

6

crimes beyond a reasonable doubt by finding that Stinson was a party to the two offenses, i.e., that he aided or attempted to aid Smith in possessing the methamphetamine and in possessing or transporting the anhydrous ammonia with intent to manufacture methamphetamine, with the intent to promote or assist the commission of the two offenses.  *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010); *Ojeda v. State*, 340 S.W.3d 792, 797 (Tex. App.—San Antonio 2011, no pet.) (declining to address links argument when the jury was authorized to convict appellant as a party and the evidence was sufficient to support that theory).  We overrule Stinson's sole issue.

## IV.  Conclusion

Having overruled Stinson's sole issue, we affirm the trial court's judgment.


PER CURIAM

PANEL:  MCCOY, DAUPHINOT, and GARDNER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  January 26, 2012

7